**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RICKY SHAWN LAYTON, Sr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 17-1023-JWL** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning October 29, 2010.[2] (R. 24, 302, 304). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He argues that the ALJ erred in weighing the treating source opinions of his primary care provider, Dr. Hisel, and his neurologist, Dr. Martinez.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court determines whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

---

[2]The ALJ found that the alleged onset date of October 29, 2010 implied a request to reopen an earlier decision made on July 18, 2011, and denied the request "because the claimant has not established good cause" to do so. (R. 24). Nevertheless, the ALJ found that Plaintiff has not been disabled "from October 29, 2010 through the date of this decision." (R. 35) (bolding omitted). Because Plaintiff does not allege error in this regard, the court does not address the ambiguity created by these two findings.

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e),

416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's evaluation of the medical opinions of Dr. Hisel or Dr. Martinez.

## II. Discussion

Plaintiff argues that the ALJ erred in weighing Dr. Hisel's medical opinion because he provided only one reason to discount the opinion, and that reason is not supported by the record evidence. (Pl. 17-18). He alleges error in weighing Dr. Martinez's medical opinion, arguing that four of the bases given to discount the opinion are not supported by the record evidence. Id., at 19-21. The Commissioner argues that

4

the ALJ's reason for discounting Dr. Hisel's opinion is valid and based on the record evidence, and should be affirmed by the court.  (Comm'r Br. 7-8).  She argues that in any case, the ALJ's evaluation of Dr. Hisel's opinion is supported by other rationale and Plaintiff has not shown prejudice from any alleged error in this regard.  Id. at 9.  With regard to Dr. Martinez's medical opinion, the Commissioner argues that the ALJ's reasons for discounting the opinion are supported by the record evidence, that Dr. Martinez did not administer psychological testing to determine the degree of limitation resulting from Plaintiff's traumatic brain injury, and did not explain the bases for the limitations he found.  Id., at 11-12.  She argues that "Plaintiff's argument is simply a veiled request for this Court [sic] to consider and weigh the evidence differently to support a finding of disability."  Id., at 13.  In his Reply Brief, Plaintiff argues that the Commissioner misunderstood Plaintiff's arguments in his Social Security Brief, and did not actually rebut them.  (Reply 1-2).

### A.     The ALJ's Evaluation of the Treating Source Opinions

The court begins, as it must, with the ALJ's decision as he characterized it, not as Plaintiff or as the Commissioner view it.  This is so because if the record evidence will support two or more conclusions, and one of those is the conclusion reached in the decision at issue, the court must affirm the decision.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would

5

justifiably have made a different choice had the matter been before it de novo." Lax, 489

F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed.

Maritime Comm'n, 383 U.S. 607, 620 (1966).

In his decision the ALJ summarized the record medical evidence. (R. 30-32). In

that summary, he noted that Plaintiff received treatment for his mental impairments from

Valeo Behavioral Health, that his mental impairments responded well to psychotropic

medication, and the 2014 treatment records showed overall improvement. (R. 31-32). He

noted that Plaintiff "also received behavior therapy, cognitive therapy, and therapeutic

living services in 2014 and 2015 through Minds Matter, LLC, an organization for

individuals with traumatic brain injuries." Id. at 32. Thereafter the ALJ explained the

weight accorded to Dr. Hisel's and Dr. Martinez's treating source opinions:

> The evidence contains several treating source opinions that describe
> limitations much greater than discussed in the actual treatment records. In
> January 2015, primary care physician Ashley E. Hisel, D.O. opined that the
> claimant's traumatic brain injury severely limited his cognitive abilities,
> memory and concentration. Dr. Hisel further opined that the claimant had
> physical limitations including no heavy lifting or standing for long periods
> of time, thereby limiting his employment options (Ex. C31F/2). In
> February 2015, Dr. Hisel reissued the same statement, but noted that the
> claimant was not employable at all (Ex. C33F/2). Dr. Hisel's opinions are
> given some weight to the extent that they are consistent with the residual
> functional capacity, since Dr. Hisel's opinion that the claimant cannot lift
> heavy weights or stand for prolonged periods does not preclude work
> performed at the sedentary level. Dr. Hisel did not treat the claimant for
> problems with cognition, thus his [sic] opinion about the claimant's non-
> exertional abilities is given limited weight.
>
> Neurologist E. Owen Martinez, M.D. opined that the claimant would be off-
> task 25 percent of an eight-hour workday and was incapable of low stress
> work (Ex. C28F/4). Dr. Martinez further opined that the claimant had

6

extreme limitations with regard to the following work-related activities: remembering locations and work-like procedures, understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; accepting instructions and responding appropriate [sic] to criticism from supervisors.  The claimant had marked limitations with regard to the following activities:  working in coordination or proximity to others without being distracted; making simple work-related decisions; getting along with coworkers or peers; maintaining socially appropriate behavior; responding appropriate [sic] to changes in the work setting; and traveling in unfamiliar places or using public transportation (Ex. C29F/2-3).  The undersigned gives Dr. Martinez's opinions limited weight. Dr. Martinez's opinions are provided on a check box questionnaire that does not even provide "no limitation" as an option.  Dr. Martinez did not support these limitations with explanations or references to objective medical evidence or treatment history.  Dr. Martinez monitored the claimant's health for seizure disorder (Exs. C4F, C7F, C26F).  He did not provide psychiatric care or counseling to the claimant, and there is no indication that he administered psychological testing to the claimant.  Thus, his familiarity with the claimant's ability to perform a wide variety of non-exertional tasks is limited.  For example, his opinion that the claimant could not use public transportation is contradicted by the claimant's own admission that he regularly used public buses (Exs. C3E; C24F/3; Hrg. Testimony).

(R. 32-33).

## B.   Standard for Evaluating a Treating Source Opinion

A treating source opinion on the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

**C.   Analysis**

Dr. Hisel provided two brief letter opinions to the Social Security Administration, one in January 2015, and one in February 2015.  (R. 1406, 1416).  In both letters, Dr. Hisel opined without further explanation that Plaintiff's traumatic brain injury caused severe non-exertional limitations in his cognitive abilities, memory, and concentration. Id.  Plaintiff argues that the sole reason the ALJ gave for discounting Dr. Hisel's opinion regarding non-exertional limitations was that she "did not treat [Mr.] Layton for problems with cognition." (Pl. Br. 17).  However, that is not an accurate characterization of the ALJ's rationale, because it ignores the ALJ's statement in the first sentence quoted above that the "treating source opinions [] describe limitations much greater than discussed in the actual treatment records."  (R. 32).   This sentence reveals that in addition to the reasons enumerated separately for each treating source, the ALJ also discounted the treating source opinions of both Dr. Hisel and Dr. Martinez because their opinions were inconsistent with their treatment records.  Plaintiff does not argue error in this finding, and the court's review of each physician's treatment records finds support for the ALJ's finding.

Plaintiff points out that a treating source need not be the primary medical care provider for a particular impairment in order for her opinion to be accorded deference, and argues that the ALJ applied this factor much more narrowly than the regulations allow and erred in finding Dr. Hisel did not treat Plaintiff for problems with cognition. (Pl. Br. 17-18).  She argues that Dr. Hisel actively participated in treating Plaintiff's cognition problems as evidenced by her recognition of his history of head injury, of

9

problems related to cognition, and referral for speech therapy.  (Pl. Br. 18) (citing R. 1425, 1435, 1437, 1442, 1445, 1448, 1460).  The court finds no error in the ALJ's finding that "Dr. Hisel did not treat the claimant for problems with cognition."  (R. 32).

In context, this is a valid reason for discounting Dr. Hisel's opinion.  While it is correct that a treating source opinion is generally worthy of deference, that does not mean that mere statement of an opinion by a treating source must be accepted.  Here, as Plaintiff acknowledges, Dr. Hisel began treating Plaintiff at Cotton-O'Neil Clinic as a new patient on October 1, 2014.  (R. 1434).  As the ALJ specifically noted, Plaintiff "received behavior therapy, cognitive therapy, and therapeutic living services in 2014 and 2015 through Minds Matter, LLC, an organization for individuals with traumatic brain injuries."  Id. at 32.  Although Dr. Hisel's treatment notes reflect an awareness that Plaintiff has a history of traumatic brain injury at five months of age and again at 19 years of age and that he has trouble with word finding, the notes do not reflect any actual treatment or functional testing of these issues by Dr. Hisel.  As Plaintiff argues, Dr. Hisel did refer him for speech therapy in November 2014.  (R. 1445).  However, that record reveals Plaintiff's "chief complaint" was back pain, and that he came with his "case manager thru TBI care" and "requests . . . a referral for speech therapy regarding TBI." Id.  In the "Assessment/Plan" section of that treatment note, Dr. Hisel stated, "Ricky was seen today for back pain," and commented that speech therapy was ordered.  (R. 1448).  She noted that Plaintiff was to "[r]eturn in about three months (around 2/5/2015) for Pain/Diabetes (needs foot exam)."  Id. at 1449.  There is no record evidence that Dr. Hisel

10

received any result from the speech therapy or other information regarding Plaintiff's functioning before writing her opinion letters in January or February 2015.  Id. at 1458-61 (Feb. 4, 2015 treatment note).  In these circumstances, and lacking a more detailed opinion letter explaining specific functional limitations resulting from Plaintiff's problems with cognition, memory, and concentration, it was not error for the ALJ to discount Dr. Hisel's opinion because it described limitations greater than the treatment notes, and because Dr. Hisel did not treat the Plaintiff for problems with cognition.

      The court also finds no error in the ALJ's evaluation of Dr. Martinez's opinion.  Plaintiff argues that it was error for the ALJ to discount Dr. Martinez's opinion because the form on which he provided his opinion regarding mental limitations did not include a box to indicate "no limitation" in any of the mental functional abilities.  As the ALJ suggested the "Medical Source Statement - Mental" completed by Dr. Martinez asked for the physician's opinion on the degree of limitation in 20 categories corresponding to the 20 mental functional abilities considered in the Commissioner's "Mental Functional Capacity Assessment" form.  (R. 1400-01).  However, while the Commissioner's form contains a selection wherein the physician or psychologist might indicate the claimant is "not significantly limited," the form completed by Dr. Martinez included boxes for each mental ability in which the physician can indicate "mildly limited," "moderately limited," "markedly limited," and "extremely limited," but it includes no selection for "no limitation," or "not significantly limited."  That fact implies that there is no other acceptable answer, or that Plaintiff presumes, expects, or desires to be rated as limited to

some degree in each functional ability.  While Plaintiff argues that Dr. Martinez was not <u>obligated</u> to select one of the responses provided, as illustrated by the fact that he left certain responses blank, the responses he left blank were on a completely separate form (R. 1397-98) and the form at issue defines "extremely limited," markedly limited," and "moderately limited" by "standard deviations below the norm," or a percentage of "overall reduction in performance," thereby suggesting that anything less that one standard deviation below the norm or less than 30% overall reduction in performance is equivalent to "mildly limited" and there is no need for a "no limitation" response.  (R. 1400).  While this reason alone would likely be insufficient to accord little weight to Dr. Martinez's opinion, it is supported by the record evidence and is a legitimate basis, in conjunction with the other bases, to discount the opinion.

   Plaintiff argues that contrary to the ALJ's rationale, Dr. Martinez "identified objective signs of difficulty with speech, attention, concentration, and slowed mental abilities."  (Pl. Br. 20) (citing R. 1396).  Plaintiff's argument misses the point of the ALJ's rationale.  The ALJ noted that Dr. Martinez did not support the limitations he assessed "with explanations or references to objective medical evidence or treatment history."  (R. 33).  As Plaintiff points out Dr. Martinez did identify objective medical signs in the sense of observable facts that can be medically described--difficulty with speech, attention, concentration, and slowed mental abilities.  However, as the ALJ found, Dr. Martinez merely stated these signs without explanation or reference to treatment

history or the medical evidence, and he did not point to evidence demonstrating the degree of limitation revealed by the signs.

Plaintiff's argument that it was error to discount Dr. Martinez's opinion because he did not provide psychiatric care or counseling to Plaintiff again misses the point of the ALJ's analysis.   The ALJ noted that Dr. Martinez treated Plaintiff for seizure disorder.  (R. 33) (citing Ex. C4F, C7F, C26F).  The ALJ's finding in this regard is supported by the record evidence (R. 526 ("we are following for seizures)).  The ALJ explained that because Dr. Martinez had not done psychiatric (neuropsychiatric) testing "his familiarity with the claimant's ability to perform a wide variety of non-exertional tasks is limited."  (R. 33).  It was in this regard that the ALJ provided the example that Dr. Martinez's "opinion that the claimant could not use public transportation is contradicted by the claimant's own admission that he regularly used public buses."  Id.  Plaintiff argues that "Dr. Martinez did not assess any limitations regarding [Mr.] Layton's ability to travel in unfamiliar places or use public transportation."  (Pl. Br. 20-21).  However, in Dr. Martinez's mental medical source statement, he checked the block that Plaintiff was "markedly limited" in the ability numbered 19, "The ability to travel in unfamiliar places or use public transportation."  (R. 1401).

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions of either Dr. Hisel or Dr. Martinez.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 1st day of December 2017, at Kansas City, Kansas.


                                              s:/ John W. Lungstrum  
                                              **John W. Lungstrum**  
                                              **United States District Judge**